UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------------X
MOHAMMED ABOULESSAN,
SAADALA ABOULESSAN, MUSTAFA ABOULISSAN,
and AMTISSAL ABOULISSAN,

<table>
<tr><td>Plaintiffs,</td><td>**COMPLAINT**</td></tr>
<tr><td></td><td>**JURY TRIAL DEMANDED**</td></tr>
<tr><td>-against-</td><td>Index No.: _____</td></tr>
</table>

THE CITY OF NEW YORK,
NEW YORK CITY POLICE DEPARTMENT, and
SERGEANT JESSNIK,
LIEUTENANT IDRIS GUVEN,
POLICE OFFICER DAVID (Shield No. 27958),
POLICE OFFICER NANCY AFANEH (Shield No. 4290),
POLICE OFFICER KIFAIEH (Shield No. 16048),
POLICE OFFICER PATRICK MEMI (Shield No. 5078),
POLICE OFFICER PHILLIP HUYNH (Shield No. 21001), and
JOHN & JANE DOE # 1-50
in their official and individual capacities.

Defendants.
------------------------------------------------------------------------X

Plaintiffs Mohammed Aboulessan ("Mohammed"), Saadala Aboulessan ("Saadala"),

Mustafa Aboulissan ("Mustafa"), and Amtissal Aboulissan ("Amtissal") (collectively,

"Plaintiffs"), by and through their attorneys, Gerstman Schwartz LLP, as and for their Complaint

against The City of New York ("City" or "NYC"), New York City Police Department ("NYPD"),

Sergeant Jessnik ("Jessnik"), Lieutenant Idris Guven ("Guven"), Officer David ("David"), Officer

Nancy Afaneh ("Nancy" or "Afanah"), Officer Kifaieh ("Kifaieh"), Officer Patrick Memi

("Memi"), and Phillip Huynh ("Huynh") (collectively, the "Defendants"), hereby allege as

follows:

## JURISDICTION & VENUE

1.      Jurisdiction is conferred upon this Court by 28 U.S.C. § 1343(a)(3)-(4), which provide for original jurisdiction in this Court of all suits brought pursuant to 42 U.S.C. § 1983, and by 28 U.S.C. § 1331, which provides jurisdiction over all cases brought pursuant to the Constitution and the laws of the United States.

2.      This Court has supplemental jurisdiction over the state law claims asserted in this case pursuant to 28 U.S.C. § 1367.

3.      Venue is proper pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events giving rise to this action occurred in Kings County.

## PARTIES

### A.      The Plaintiffs

4.      Plaintiff Mohammed Aboulessan is an individual residing at 241 79th Street, Brooklyn, New York 11209.

5.      Plaintiff Saadala Aboulessan is an individual residing at 241 79th Street, Brooklyn, New York 11209.

6.      Plaintiff Mustafa Aboulissan is an individual residing at 241 79th Street, Brooklyn, New York 11209.

7.      Plaintiff Amtissal Aboulissan is an individual residing at 241 79th Street, Brooklyn, New York 11209.

### B.      The Defendants

8.      Defendant City of New York is a municipal corporation, incorporated under the laws of the State of New York. It operates the New York City Police Department, which acts as its agent in the area of law enforcement and for which it is ultimately responsible. Defendant City

assumes the risks incidental to the maintenance of a police force and police officers as said risks attach to the public consumers of the services provided by the NYPD.

9.      Defendant New York City Police Department is a law enforcement agency operating under New York City and State laws.

10.     Defendant Jessnik is a Sergeant of the NYPD. He is named in his official and individual capacities.

11.     Defendant Guven is and was a Lieutenant of the NYPD. He is named in his official and individual capacities.

12.     Defendant David (Shield No. 27958) is a police officer of the NYPD. He is named in his official and individual capacities.

13.     Defendant Nancy Afaneh (Shield No. 4290) is a police officer of the NYPD. She is named in her official and individual capacities.

14.     Defendant Kifaieh (Shield No. 16048) is a police officer of the NYPD. He is named in his official and individual capacities.

15.     Defendant Partrick Memi (Shield No. 5078) is a police officer of the NYPD. He is named in his official and individual capacities.

16.     Defendant Phillip Huynh (Shield No. 21001) is a police officer of the NYPD. He is named in his official and individual capacities.

17.     Defendants John and Jane Doe # 1-50 are either unidentified at present or Plaintiffs do not yet have sufficient information to properly plead a cause of action against them, but upon information and belief, they are employees, agents, or associates of the Defendants that witnessed, concealed, facilitated, or otherwise participated in the acts to which Plaintiffs were subjected, and

3

as such, Plaintiffs reserve the right to amend the instant pleading to include the identities of such persons, when and if such identities become known, within the appropriate limitations period.

18.     At all relevant times, Defendants were acting under color of state and local law. Defendants are sued, as indicated above, in their official and individual capacities. At all relevant times, Defendant City was responsible for making and enforcing the policies of the NYPD and was acting under color of law—that is, under color of the statutes, ordinances, regulations, policies, customs, and usages of the State of New York and City of New York.

## NOTICE OF CLAIM

19.     Plaintiffs, in furtherance of their causes of action as stated herein, filed a timely Notice of Claim on December 6, 2017, against the City in compliance with General Municipal Law Section 50.

20.     More than 30 days have elapsed since service of the Notice of Claim, and the City has failed to pay or adjust said claim.

21.     50-h examinations were held in advance of commencing this lawsuit.

22.     This action has been commenced within one year and ninety days after the events giving rise to this complaint.

## FACTUAL ALLEGATIONS

**A.     The Land Use Dispute: Some Context**

23.     On or about May 18, 2016, an entity by the name of Kingsland 79 LLC purchased real property located at 237 79th Street, Brooklyn, New York ("Kingsland Property"), with the alleged purpose of constructing a two-family residence.

24.     The Plaintiffs are neighbors of the Kingsland Property, residing together in a dwelling place located at 241 79th Street, Brooklyn, New York ("Premises").

25.     The Plaintiffs own the real property known as and located at 241 79th Street, Brooklyn, New York, which is identified on the Kings County Tax Map as Block 05968, Lot 0067 ("Aboulissan Parcel").

26.     The Aboulissan Parcel and Kingsland Property were once one parcel, but on or about November 22, 1918, the owner of the formerly combined parcels, Sarah Oberkhiser, subdivided the parcels in two, creating Block 5968 and Lot 0067 (which ultimately became the Aboulissan Parcel).

27.     After splitting the two parcels, Ms. Oberkhiser took up residence on the Aboulissan Parcel. Although residing on only the Aboulissan Parcel, Ms. Obkerhiser created a shared driveway ("Shared Driveway") to ensure that she would have access to the rest of her house ("Aboulissan House") for parking.

28.     The Plaintiffs maintain that that the Aboulissan Parcel has the right to use the Shared Driveway, which runs through the edge of the Kingsland Property. Frank Landy, Kingsland's predecessor in interest, never gave the Plaintiffs consent to use the Shared Driveway. But, from December 30, 1986, when the Aboulissans acquired the Aboulissan Parcel and House, until May 18, 2016, when Kingsland acquired the Kingsland Property, the Aboulissans have openly and continuously used the Shared Driveway to access a private garage behind the Aboulissan House to park their vehicles.

29.     Importantly, for approximately three decades, the Plaintiffs—*at their sole expense*—treated and maintained the Shared Driveway as their own. At their own cost, the Plaintiffs improved the Shared Driveway by installing a large, expensive, iron gate ("Gate") that protected the Shared Driveway from intruders and vagrants. At their sole expense, the Plaintiffs

also installed a sewer-main and drainage system beneath the Shared Driveway—and paved the full length of the Shared Driveway (109 feet and 10 feet in width).

30.     The house that was situated on the Kingsland Property when Kingsland purchased the Kingsland Property was condemned and torn down in 2013. The Plaintiffs' use, care, and maintenance of the Shared Driveway occurred prior to and continued after condemnation.

31.     On May 21, 2016, Kingsland's principal (Ali Rashid) promised Plaintiff Mohammed that neither Kingsland's impending construction, nor the house that they would be constructing, would interfere with the Plaintiffs' use of the Shared Driveway.

32.     In a complete—and surprising—about-face a mere few days later, on May 25, 2016, the Kingsland Property owners ("Developer(s)") appeared without warning, with heavy machinery in hand, and began destroying the Gate covering the Shared Driveway.

33.     Police were called, and since that time, numerous disputes have arisen between the Kingsland Property owners and the Plaintiffs, requiring police response.

34.     The Kingsland Property owners erected a cement wall, hidden and surrounded by a wooden construction fence, blocking access to the Shared Driveway.

35.     The issue concerning the Shared Driveway is the subject of a heated litigation in *Mohammed Aboulissan v. Kingsland 79 LLC*, Index No. 510852/2016, which was filed in Kings County Supreme Court on June 27, 2016.

36.     Upon information and belief, to strengthen their position in the case, the Kingsland Property owners destroyed and repaved the curb-cut ("Curb-Cut") that spanned in front of the Kingsland Property and Aboulissan Parcel.

37.     There is no reason for the Curb-Cut to have spanned both the Kingsland Property and the Aboulissan Parcel unless both had equal access to the Shared Driveway. The Kingsland Property owners knew this, so they destroyed the Curb-Cut.

38.     Although they were engaging in Constitutionally protected activity and were otherwise not doing anything that would warrant arrest, Mohammed, Saadala,  Mustafa, and Amtissal were falsely arrested on September 8 and September 11, 2017.

39.     Specifically, Mohammed and Saadala were falsely and wrongfully arrested on September 8, 2017. Saadala, Mustafa, and Amtissal were falsely arrested on September 11, 2017.

40.     Criminal charges were initiated and them, but have since been adjourned in contemplation of dismissal.

**B.     September 8, 2017 Arrests**

41.     On September 8, 2017, at approximately 9:00 a.m. Plaintiffs observed construction workers at the Premises in front of the Plaintiffs' home, commencing construction work that would result in the destruction of the Curb-Cut in front of the Shared Driveway.

42.     Further, Plaintiffs observed workers commencing construction on the neighboring property located at the Kingsland Property.

43.     Upon information and belief, Faisal Rashid, a person affiliated with Kingsland 79 LLC ordered that the construction workers demolish and destroy with jackhammers the Curb-Cut, which led to the Shared Driveway lawsuit currently under litigation.

44.     The NYPD had been called many times to the Premises prior to the September 8 arrests due to issues and disagreements between Plaintiffs and the Kingsland Property owners.

45.     Defendants were therefore on notice and aware of the ongoing conflict regarding the Plaintiffs' property rights, the pending litigation, and the Kingsland Property owners' attempts

to interfere with the property in dispute prior to the September 8 arrests, beginning on or about May 2016.

46.     After the Developers refused to cease construction over the Shared Driveway and Curb-Cut until the property dispute was resolved, the Plaintiffs were prompted to call the police.

47.     Plaintiff Saadala first called the police to the scene around 9:00 a.m. on September 8, 2017, in order to prevent the Developer from demolishing the Curb-Cut and destroying their access to the Shared Driveway before the underlying land use case was resolved.

48.     When the NYPD arrived after this first call, nothing was resolved.

49.     Plaintiff Saadala called the police a second time on September 8, 2017, between 10:00 a.m. and 10:15 a.m.

50.     When the NYPD arrived after this second call, nothing was resolved.

51.     Plaintiff Saadala called the police a third time on September 8, 2017, between 11:00 a.m. and 11:15 a.m.

52.     Upon information and belief, the Developers called the police on or about the same time because they did not like that the Plaintiffs were taking pictures of the scene.

53.     The Plaintiffs demonstrated to the police officers that there was a pending property dispute concerning the Shared Driveway, and rightfully complained that their property was about to be destroyed.

54.     Despite this, the officers wrongfully arrested Plaintiffs Saadala and Mohammed because of their complaints to the police regarding the destruction of property.

55.     Before being handcuffed, Mohammed informed the arresting officer that he had surgery recently and that the wounds were freshly stitched.

56.     Plaintiff Mohammed pleaded that he not be handcuffed from behind because of his stitches.

57.     Officer Jessnik, the arresting officer, responded: "I don't care."

58.     Despite Defendant Mohammed's recent surgery and pleas, Officer Jessnik did not handcuff Mohammed in the front; he forcefully handcuffed Mohammed from the back, stretching his arms and inflicting pain.

59.     Because of the position in which he was handcuffed with steel cuffs, it hurt Mohammed from the stitches and staples in his stomach.

60.     The officers attempted to force Mohammed into a sedan, but Mohammed refused due to the fact that he was starting to bleed.

61.     The officers unnecessarily tried to use a yellow gun, which upon information and belief, appeared to be a Taser, in order to paralyze Mohammed, but he cried out that they could not use it against him because he was sick.

62.     Even though Mohammed was bleeding from his stitched wounds, officers forced him into the back seat of a police vehicle.

63.     Saadala was arrested on September 8, 2017, while he was standing on the sidewalk in front of his house.

64.     Saadala was physically thrown into the back seat of a police car.

65.     Saadala was not cuffed by his feet, yet the NYPD still threw him into the police car in a manner in which he could not sit upright.

66.     Furthermore, the police neglected to seatbelt Saadala, leaving him dangerously exposed to potential injury in the event of an accident with his hands cuffed behind his back.

67.     While Saadala was lying on his side in the back of the police car, the officer driving suddenly turned the wheel and started speeding away.

68.     The police car with Saadala inside sped into the driver's side of a civilian car.

69.     During the accident, Saadala was suddenly thrown off the seat, slamming into the divider in the back of the car, injuring his shin.

70.     This accident occurred on 79th Street, Brooklyn, New York near the restaurant called Giacomo's.

71.     Saadala immediately requested medical attention for the pain in his legs as a result of the car accident.

72.     But Medical attention was not immediately provided.

73.     And the officers refused to take an accident report or an injury report.

74.     The officers attempted to flee the scene, but the driver of the private car prevented the officers from leaving and demanded an accident report.

75.     Saadala heard on the radio that the police officers who were driving him to the precinct told other officers over the radio not to respond to the scene of the accident.

76.     However, due to the private car driver's protest, additional officers arrived on the scene of the accident.

77.     Upon information and belief, an accident report was prepared for the private individual.

78.      After the car accident, approximately twenty minutes elapsed while Saadala suffered pain to his shin due to the impact while he was lying on the floor of the backseat of the police car.

79.     Eventually, Saadala was finally escorted to the precinct.

80.     Saadala spent approximately four to eight hours at the precinct and requested medical attention approximately six to eight times, but was denied medical attention during that time.

81.     Finally, after approximately four to eight hours, Saadala was transported to the emergency room at Lutheran Medical Center.

82.     Saadala was treated for injuries to his left leg, shin area, and was prescribed pain medication.

83.     Saadala was then transferred to downtown, Central Booking, where he remained for approximately six to eight hours.

84.     When Mohammed was transferred to Central Booking, Mohammed continued to alert officers to his bleeding wound and worsening medical condition, but the officers refused him medical attention.

85.     During the booking process, Mohammed told the officers of his recent surgery. But the officers ignored Mohammed's pleas and expressed a callous and outrageous disregard for Plaintiff's health concerns and special needs for medical attention.

86.     The officers never did anything to alert the jailors to Plaintiff's pressing need for medical attention or to cause Plaintiff to receive the same.

87.     Plaintiff also orally notified the officers and jailors in the area of his worsening condition.

88.     Eventually, after the shift change, Mohammed was transferred to the emergency room where he finally received medical attention.

89.     Mohammed's surgeon was called to address Mohammed's wounds. Mohammed had to attend follow up visits with his doctor after being arrested.

C.    **September 11, 2017 Arrests**

90.    On September 11, 2017, the Developers began to commence further construction on the Shared Driveway.

91.    The police were called by Plaintiffs at approximately 12:00 p.m. in an effort to prevent the destruction of the property.

92.    Upon their arrival, police officers immediately took Saadala's phone from him and dropped it on the floor, then slammed Saadala on the hood of a vehicle and arrested him.

93.    Saadala asked the officers why he was being arrested, but was not given any justification.

94.    Upon witnessing her brother being forcefully arrested, Amitssal began video recording the excessive force and yelling for the police to stop.

95.    Amtissal asked the NYPD police officers, including but not limited to Lieutenant Guven, Police Officer David, Police Officer Nancy Afaneh, Police Officer Kifaieh, and Police Officer Memi, why they were arresting Saadala.

96.    In response to Amtissal's questions regarding the reason for her brother's arrest, police officers, including but not limited to Lieutenant Guven, Police Officer David, Police Officer Nancy Afaneh, and Police Officer Kifaieh, assaulted Amitssal, falsely arrested her without cause of justification, and used excessive force in effectuating her arrest.

97.    Upon witnessing her recording, these officers forcibly grabbed Amtissal, knocked her to the ground, dragged her along the sidewalk, causing her right foot to become caught and injured between the sidewalk and the tire of a car, forcibly lifted her up and slammed her against the hood and windshield of a parked car outside of her home.

98.     Lieutenant Guven then forcibly pressed his right arm and elbow against the face, chin, neck, and left shoulder of Amtissal, pinning her head against the windshield of a car, causing her pain and obstructing her breathing.

99.     NYPD officers also forcibly grabbed the wrists of Amtissal and applied handcuffs in a manner intended to cause her pain and discomfort, despite Amtissal's repeated statements that the officers were hurting her wrists.

100.    When Amtissal asked the NYPD police officers why they were arresting her, Lieutenant Guven replied that, "You assaulted me," despite knowing that such statement was blatantly false. Police Officer Afaneh removed Amtissal's wristwatch from her left wrist and dropped the watch on the ground, before Lieutenant Guven, a male police officer, touched the area of the right rear pocket of Amtissal's pants, in a purported effort to place the watch into her pants pocket, all without Amtissal's consent.

101.    On September 11, 2017, as Amtissal was being arrested, her brother, Mustafa, was taking a video recording of the events as they were occurring outside of their home. Upon seeing that Mustafa was recording the events, including the unlawful arrest and excessive force used against his sister, members of the NYPD, including but not limited to Lieutenant Guven, falsely arrested Mustafa without cause or justification, and in effectuating his arrest, used excessive force, by, inter alia, forcibly pushing Mustafa between two parked cars, pinning him and pushing him in between the parked cars, forcibly grabbing him, slamming him onto the street, and applying handcuffs in a manner intended to cause him pain and discomfort.

102.    After being falsely arrested on September 11, 2017, claimants Amtissal, Mustafa, and Saadala were taken to the 68th Precinct in Brooklyn, and criminal court proceedings were

erroneously and baselessly initiated against Amitssal, Mustafa, and Saadala as a result of their false arrests on September 11, 2017, for which claimants made multiple court appearances.

103.    Additionally, after being falsely arrested and taken to the 68th Precinct on September 11, 2017, Amtissal, Mustafa, and Saadala repeatedly requested but were denied medical attention for approximately two hours. They were also not read their Miranda rights upon being arrested.

104.    Plaintiffs Amtissal, Saadala, and Mustafa were eventually taken to the hospital to receive medical attention for their injuries due to the excessive force they endured during the September 11, 2017 arrests.

105.    Upon their release from the hospital, Plaintiffs were taken to Central Booking and incarcerated.

106.    As a result of the September 8, 2017 arrests and the September 11, 2017 arrests, criminal proceedings were erroneously and baselessly initiated against the Plaintiffs, for which Plaintiffs had to make multiple court appearances.

107.    The charges were eventually adjourned in contemplation of dismissal.

108.    Plaintiffs have sustained severe and continuing personal injuries, severe shock, and have been caused to suffer severe and continuing emotional anguish and psychological trauma resulting in nervousness, anxiety, fear, humiliation, degradation, shame, impairment, and damage to their personal reputations and character.

109.    As a result of these egregious and vicious violations of their most fundamental civil and constitutional rights, Plaintiffs have suffered and continue to suffer physical, emotional, and psychological injuries, for which they have sought and continue to seek medical care, causing

14

Plaintiffs to abstain from their usual and daily activities, both professional and personal, as well as obligating Plaintiffs to pay for medical care.

110.    As a result of their false arrests which occurred during the September 8 arrests and the September 11 arrests, Plaintiffs have also become obligated to retain and pay for their legal counsel in connection with the criminal proceedings which were erroneously and baselessly initiated against them, for which Plaintiffs had been and continue to be forced to make court appearances.

## FIRST CAUSE OF ACTION
False Arrest & False Imprisonment
(Against all Defendants)

111.    Plaintiffs repeat, reiterate, and re-allege each and every allegation set forth above with the same force and effect as though fully set forth herein.

112.    The Fourth Amendment of the United States Constitution, Article 1, Section 12, of the New York State Constitution, and New York common law protect against unreasonable searches and seizures.

113.    Both federal and state law guarantee all citizens the right to be secure against unreasonable searches and seizures.

114.    The Plaintiffs, under color of law, were wrongfully, unlawfully, and unjustifiably detained, arrested, and imprisoned.

115.    The Defendants actions as outlined above constitute false arrest and imprisonment.

116.    In violating the Plaintiffs' rights, the Defendants intended to confine the Plaintiffs.

117.    The Plaintiffs were conscious of the confinement and did not consent.

118.    The confinement was not otherwise privileged under the law.

119.    Therefore, said false arrest and imprisonment by Defendants constituted unlawful deprivations of Plaintiffs' rights, liberties, and freedoms.

120.    The said false arrest and imprisonment was carried out by Defendants without a warrant, probable cause or reasonable suspicion.

121.    Said false arrest and imprisonment was carried out by the Defendants through the use of excessive force and brutality.

122.    Throughout the Plaintiffs' false arrest and imprisonment, Plaintiffs were subjected to verbal and psychological abuse by Defendants.

123.    Throughout Plaintiffs' false arrest and imprisonment, Plaintiffs were denied medical care for their physical injuries, thereby exacerbating said injuries.

124.    All of the foregoing occurred without any fault, wrongdoing, or provocation whatsoever by Plaintiffs.

125.    Defendant City is responsible for the hiring, training, and management of all NYPD police officers.

126.    Each of the individual Defendants is a high level policymaker, or an employee operating under the direction of said policymaker, that has the power to establish municipal policies, including the responsibility to train or supervise subordinates.

127.    Collectively and individually, the Defendants have been acting pursuant to a longstanding policy or custom, which has amounted to a continuous violation, of acting with deliberate indifference, malice, and bad faith against Plaintiffs in violation of their constitutional rights.

128.    To the extent the constitutional violations suffered by Plaintiffs were facilitated by agents of the Defendants, the Defendants were grossly negligent in the supervision of their

subordinates who facilitated the constitutional violations experienced by the Plaintiffs and failed to act on information indicating that unconstitutional acts were occurring.

129.     As a direct and proximate result of the false arrest and imprisonment committed against Plaintiffs by Defendants, and their deliberate policy or custom, Plaintiffs suffered severe physical injuries from brutality and excessive force by the Defendants, severe emotional distress, and exacerbation of said injuries and deprivation of Plaintiffs' rights, privileges, and freedoms as a result of the actions and omissions of other named and unidentified NYPD officers.

### SECOND CAUSE OF ACTION
Excessive Force
(Against all Defendants)

130.     Plaintiffs repeat, reiterate, and re-allege each and every allegation set forth above with the same force and effect as though fully set forth herein.

131.     The United States and New York Constitutions protect against unlawful searches and seizures, including those involving excessive force.

132.     The Defendants, under color of law, initiated contact with Plaintiffs without any articulable reason permitted by the United States Constitution, federal, and/or state law.

133.     The Defendants, under color of law, used excessive force against Plaintiffs as outlined above.

134.     The named and unidentified NYPD police officers described herein, under color of law, wrongfully and unlawfully detained, arrested and verbally and psychologically abused Plaintiffs, and denied Plaintiffs medical care, over the course of hours after their arrest, without any articulable reason permitted by the U.S. Constitution, federal, or state law.

135.     The Defendants, acting under color of law, knowingly made false allegations against Plaintiffs and caused a criminal complaint to be filed against Plaintiff with the malicious

intention of wrongfully diverting blame into Plaintiffs for Defendants gross acts of misconduct as described herein, and with the intention of initiating a wrongful prosecution against Plaintiffs.

136.    Defendant City is responsible for the hiring, training, and management of all NYPD police officers.

137.    Each of the individual Defendants is a high level policymaker, or an employee operating under the direction of said policymaker, that has the power to establish municipal policies, including the responsibility to train or supervise subordinates.

138.    Collectively and individually, the Defendants have been acting pursuant to a longstanding policy or custom, which has amounted to a continuous violation, of acting with deliberate indifference, malice, and bad faith against Plaintiffs in violation of their constitutional rights.

139.    To the extent  the constitutional violations suffered by Plaintiffs were facilitated by agents of the Defendants, the Defendants were grossly negligent in the supervision of their subordinates who facilitated the constitutional violations experienced by the Plaintiffs and failed to act on information indicating that unconstitutional acts were occurring.

140.    As a direct and proximate result of the false arrest and imprisonment committed against Plaintiffs by Defendants through the use of excessive force, and their deliberate policy or custom, Plaintiffs suffered severe physical injuries from brutality and excessive force by the Defendants, severe emotional distress, and exacerbation of said injuries and deprivation of Plaintiffs' rights, privileges, and freedoms as a result of the actions and omissions of other named and unidentified NYPD officers.

## THIRD CAUSE OF ACTION
First Amendment Retaliation
(Against all Defendants)

141.    Plaintiffs repeat, reiterate, and re-allege each and every allegation set forth above with the same force and effect as though fully set forth herein.

142.    The United States and New York State Constitutions guarantee the freedom of speech and to petition the government for redress of grievances.

143.    The Plaintiffs had a First Amendment protected interest in standing on the public sidewalk and/or in the street to record and take pictures, in addition to the right to call relevant agencies, such as the NYPD, in order to make good faith complaints.

144.    As outlined above, the Defendants, under color of law, falsely arrested and confined the Plaintiffs substantially because of the exercise of their First Amendment rights.

145.    And as a result of said conduct by the Defendants, under color of law, the Plaintiffs' exercise of speech has been chilled.

146.    Defendant City is responsible for the hiring, training, and management of all NYPD police officers.

147.    Collectively and individually, the Defendants have been acting pursuant to a longstanding policy or custom, which has amounted to a continuous violation, of acting with deliberate indifference, malice, and bad faith against Plaintiffs in violation of their constitutional rights.

148.    To the extent the constitutional violations suffered by Plaintiffs were facilitated by agents of the Defendants, the Defendants were grossly negligent in the supervision of their subordinates who facilitated the constitutional violations experienced by the Plaintiffs and failed to act on information indicating that unconstitutional acts were occurring.

149.    Each of the individual Defendants is a high level policymaker, or an employee operating under the direction of said policymaker, that has the power to establish municipal policies, including the responsibility to train or supervise subordinates.

150.    As a direct and proximate result of the false arrest and imprisonment committed against Plaintiffs by Defendants, and their deliberate policy or custom, Plaintiffs suffered severe physical injuries from brutality and excessive force by the Defendants, chilled speech, severe emotional distress, and exacerbation of said injuries and deprivation of Plaintiffs' rights, privileges, and freedoms as a result of the actions and omissions of other named and unidentified NYPD officers.

### FOURTH CAUSE OF ACTION
Deliberate Indifference to a Serious Medical Condition
(Against all Defendants)

151.    Plaintiffs repeat, reiterate, and re-allege each and every allegation set forth above with the same force and effect as though fully set forth herein.

152.    The Due Process Clause of the Fourteenth Amendment protects against deliberate indifference to a serious medical condition.

153.    The Defendants, under color of law, deprived each of the Plaintiffs during the course of the September 8, 2017, and September 11, 2017, arrests adequate medical care.

154.    This deprivation was sufficiently serious to implicate constitutional protections.

155.    The Defendants executed said deprivations deliberately and with reckless indifference, despite knowing or having reason to know that Plaintiffs required medical assistance.

156.    Defendant City is responsible for the hiring, training, and management of all NYPD police officers.

157.    Collectively and individually, the Defendants have been acting pursuant to a longstanding policy or custom, which has amounted to a continuous violation, of acting with deliberate indifference, malice, and bad faith against Plaintiffs in violation of their constitutional rights.

158.    To the extent the constitutional violations suffered by Plaintiffs were facilitated by agents of the Defendants, the Defendants were grossly negligent in the supervision of their subordinates who facilitated the constitutional violations experienced by the Plaintiffs and failed to act on information indicating that unconstitutional acts were occurring.

159.    Each of the individual Defendants is a high level policymaker, or an employee operating under the direction of said policymaker, that has the power to establish municipal policies, including the responsibility to train or supervise subordinates.

160.    As a direct and proximate result of the false arrest and imprisonment, and subsequent denial of medical care, committed against Plaintiffs by Defendants, and their deliberate policy or custom, Plaintiffs suffered severe physical injuries from brutality and excessive force by the Defendants, severe emotional distress, and exacerbation of said injuries and deprivation of Plaintiffs' rights, privileges, and freedoms as a result of the actions and omissions of other named and unidentified NYPD officers.

**FIFTH CAUSE OF ACTION**
Reckless Operation of Police Vehicle
(Against all Defendants)

161.    Plaintiffs repeat, reiterate, and re-allege each and every allegation set forth above with the same force and effect as though fully set forth herein.

162.   During the September 8, 2017, arrests the officers that were transporting Saadala to the precinct following his arrest operated their vehicle recklessly, causing an accident with a civilian car.

163.   During the course of their reckless maneuver, accelerating into the street without watching other vehicle traffic, Saadala was injured and denied immediate medical attention.

164.   As a direct and proximate result of the officers' recklessness in transporting Saadala, he sustained physical injury, including bruises, severe emotional distress, anguish, and other non-economic damages.

### SIXTH CAUSE OF ACTION
Malicious Prosecution
(Against all Defendants)

165.   Plaintiffs repeat, reiterate, and re-allege each and every allegation set forth above with the same force and effect as though fully set forth herein.

166.   The Fourth Amendment of the United States Constitution and New York law prohibit unconstitutional deprivations of liberty resulting from malicious prosecution.

167.   After the Plaintiffs were arrested, baseless criminal proceedings were initiated against them maliciously without probable cause.

168.   After numerous appearances, these legal proceedings were adjourned in contemplation of dismissal and therefore were terminated in the Plaintiffs' favor.

169.   Defendant City is responsible for the hiring, training, and management of all NYPD police officers.

170.   Collectively and individually, the Defendants have been acting pursuant to a longstanding policy or custom, which has amounted to a continuous violation, of acting with

deliberate indifference, malice, and bad faith against Plaintiffs in violation of their constitutional rights.

171.    To the extent the constitutional violations suffered by Plaintiffs were facilitated by agents of the Defendants, the Defendants were grossly negligent in the supervision of their subordinates who facilitated the constitutional violations experienced by the Plaintiffs and failed to act on information indicating that unconstitutional acts were occurring.

172.    Each of the individual Defendants is a high level policymaker, or an employee operating under the direction of said policymaker, that has the power to establish municipal policies, including the responsibility to train or supervise subordinates.

173.    As a direct and proximate result of the false arrest and imprisonment, and subsequent denial of medical care, committed against Plaintiffs by Defendants, and their deliberate policy or custom, Plaintiffs suffered severe physical injuries from brutality and excessive force by the Defendants, severe emotional distress, and exacerbation of said injuries and deprivation of Plaintiffs' rights, privileges, and freedoms as a result of the actions and omissions of other named and unidentified NYPD officers.

### SEVENTH CAUSE OF ACTION
Assault & Battery
(Against all Defendants)

174.    Plaintiffs repeat, reiterate, and re-allege each and every allegation set forth above with the same force and effect as though fully set forth herein.

175.    As set forth above, Defendants committed vicious and intentional acts against the Plaintiffs, including but not limited to slamming them into nearby objects such as cars and other forms of physical contact.

176.    Said actions outlined above were totally unnecessary, unprovoked, and excessive.

177. Said actions by the Defendants constitute assault and battery against the Plaintiffs.

178. Said actions by the Defendants caused Plaintiffs severe physical injuries.

179. Defendant City is responsible for the hiring, training, and management of all NYPD police officers.

180. As a direct and proximate result of the false arrest and imprisonment, and subsequent denial of medical care, committed against Plaintiffs by Defendants, and their deliberate policy or custom, Plaintiffs suffered severe physical injuries from brutality and excessive force by the Defendants, severe emotional distress, and exacerbation of said injuries and deprivation of Plaintiffs' rights, privileges, and freedoms as a result of the actions and omissions of other named and unidentified NYPD officers.

### EIGHTH CAUSE OF ACTION
Negligent and Intentional Infliction of Emotional Distress
(Against all Defendants)

181. Plaintiffs repeat, reiterate, and re-allege each and every allegation set forth above with the same force and effect as though fully set forth herein.

182. The actions of the Defendants outlined above, including slamming Plaintiffs into cars and other objects, and denying necessary medical care, caused Plaintiffs severe and continuing emotional distress and psychological trauma.

183. Defendants committed the above actions against the Plaintiffs with the intention of causing Plaintiffs emotional and psychological harm.

184. Defendant City has been negligent and grossly negligent in the hiring, training, and management of NYPD police officers, including but not limited to the named and unidentified NYPD police officers described herein.

185.   As a direct and proximate result of Defendants' negligence and gross negligence, Plaintiffs suffered severe and continuing emotional distress and psychological trauma.

## **PRAYER FOR RELIEF**

**WHEREFORE**, upon all of the facts, allegations, and causes of action as set forth and alleged herein, Plaintiffs respectfully request that this Court:

A.   Grant judgment against Defendants as to each and every cause of action herein alleged;

B.   Grant compensatory damages in an amount to be determined at trial;

C.   Grant punitive damages in an amount to be determined at trial;

D.   Grant disbursements, costs, and attorneys' fees; and

E.   Grant any such further relief as the Court deems just, proper, and equitable.

## **JURY DEMAND**

Plaintiffs hereby demand a trial by jury as to all issues so triable.

Dated: December 6, 2018
       Garden City, New York

**GERSTMAN SCHWARTZ LLP**

By:_____
      David M. Schwartz, Esq.
      Ian-Paul A. Poulos, Esq.
      1399 Franklin Avenue, Suite 200
      Garden City, New York 11530
      Tel. No.: (516) 880 – 8170

      *Attorneys for Plaintiffs*